**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARY J. DAVIS,

       Plaintiff,

vs.                               CASE NO. 3:00-cv-401-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

       Defendant.

_____

# O R D E R

Plaintiff's counsel in this Social Security case has filed a Motion for Award of Attorney Fees under 42 U.S.C. § 406(b) (Doc. #34), seeking an award under a contingency fee contract for $15,093.40 of the past due benefits Plaintiff was awarded in the case.  The Defendant has filed a response opposing the award of that amount, arguing it would amount to a windfall (Doc. #35).

*History of case:*

Plaintiff initially filed this case in April 2000 (Doc. #1); however, a summons was not served until February 2001 (Doc. #13).[2]  Defendant, the Commissioner of the Social Security Administration, filed an answer in June 2001 (Doc. #20).  Plaintiff's counsel then filed, over a period of months, three unopposed motions to file Plaintiff's memorandum out of time (Docs. #22, #24, #26) and one opposed motion (Doc. #28).  He also filed in

_____

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

[2]Review of the record does not reveal any reason for the delayed service of summons.

February 2002, a fifth motion to file out of time (opposed) (Doc. # 9), which was granted

with the provision that it would be the last extension granted (Doc. #30).  The memorandum

of law on behalf of Plaintiff was ultimately filed April 15, 2002 (Doc. #31).

Less than two months later, the Commissioner filed a motion to reverse the

Commissioner's denial of benefits and remand the case to obtain additional medical

evidence and  further evaluate the record.  *See* 42 U.S.C.  § 405(g); *see also*,  Doc. #32).

The Court granted the motion (Doc. #34).

Plaintiff filed a motion for attorney fees under the Equal Access to Justice Act

("EAJA")[3] (Doc. #35), which was granted in the amount of $2,229.37 (Doc. #40).

Subsequently, the Social Security Administration, after further administrative

proceedings, awarded disability benefits to the Plaintiff in 2003 with the calculation of

benefits commencing on or about February 29, 1996, based on Plaintiff's 1997 application

(*see* Doc. # 34-1, Exh. A).  In addition, Plaintiff's counsel received $5,300 from past-due

benefits for his work on Plaintiff's behalf at the administrative level (Doc. #42-1, ¶ 10).

Thereafter, the  instant motion for attorney fees was filed in January 2006 (Doc. #42-

1)[4].

---

[3] 28 U.S.C. § 2412.

[4]There is no information in the record as to why the motion was filed more than two years after the ALJ awarded benefits to the Plaintiff.  The Commissioner did not oppose the motion for fees based on timeliness.  Under Rule 54(d)(2), Fed.R.Civ.P., and Middle District of Florida Local R. 4.18(a), claims for attorney fees should be filed within fourteen (14) days after the entry of judgment.  However, the attorney is not eligible for § 406(b)(1)(A) fees unless the Commissioner subsequently finds the claimant disabled and awards benefits. In this case, that ALJ issued a post-remand decision favorable to claimant on September 23, 2003 (Doc. #42-1, ¶ 7).  Thus, the fee application in 2006 is extremely tardy.  In *Bergen v. Commissioner,* 454 F.3d 1273, 1278 (11th Cir. 2006), the Eleventh Circuit reversed a district court's denial of fees based on two issues, one of which was timeliness.  The court

*Social Security statutory fee structure:*

Congress has enacted laws to regulate fees for representation of Social Security claimants at both the administrative stage and in federal court.  At the administrative stage, 42 U.S.C. § 406(a)(1) provides the Commissioner may "fix" a reasonable fee for representation before the agency in accordance with regulations.  Under that section, the fees for a successful applicant are capped at an agreed amount, providing it is no more than twenty-five percent of the past-due benefits or $4,000, whichever is lower.  42 U.S.C. § 406(a)(2)(A).   The statute allows the Commissioner to raise the $4,000 cap periodically to correspond with increases in primary insurance amounts.  42 U.S.C. § 406(a)(2)(A)(iii).

For cases in which a court has issued a judgment favorable to a claimant represented by an attorney, the Court "may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of twenty-five percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . ." 42 U.S.C. § 406(b)(1)(A).  That section has been interpreted to allow an award of benefits where the district court remands the case to the Commissioner of Social Security and the Commissioner on remand awards past-due benefits.  *Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1276 (11th Cir. 2006).

An attorney for a prevailing party also may claim "within thirty days of final judgment" reasonable fees for the representation under the Equal Access to Justice Act, 28 U.S.C.

---

stated that since the Commissioner had not objected on timeliness, the court would not address the issue.  However, the court did suggest an appropriate procedure for attorneys to request a specified period to file fee claims in the initial judgment. *Id.* at 1278, n.2. Here, the Court chooses to follow the Eleventh Circuit and not address the timeliness, or lack thereof, of counsel's motion for fees, given Defendant did not raise the issue.

§ 2412 (b).  The party also must allege that the position of the United States in the matter "was not substantially justified." 28 U.S.C. § 2412(d)(1)(B).  That fee may be claimed within thirty days after the court issues final judgment in the action, which the statute defines as a "judgment that is final and not appealable. . . ."  42 U.S.C. § 2412(d)(2)(G).  In a case involving a sentence six remand, the filing period does not begin until after the post-remand proceedings are completed, the Commissioner returns the case to federal court, the court enters final judgment and the appeal period runs.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991).

In defining "not substantially justified," the Supreme Court has indicated EAJA fees are not available every time a claimant prevails, but only when the Commissioner's position lacks "a reasonable basis in law and fact."   *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988).

An attorney who is successful in claiming both EAJA fees from the United States and an award under § 406(b) (which comes out of past-due benefits) must refund "to the claimant the amount of the smaller fee."  *Gisbrecht v. Barnhart,* 535 U.S. 789, 796 (2002).

*Legal analysis:*

The questions presented are whether awarding the amount requested under the contingency fee agreement is reasonable, and, if it is not, what constitutes a reasonable fee.  The framework for the analysis comes from the *Gisbrecht* case, in which the Supreme Court examined conflicting methods of calculating fees under § 406(b) in various circuits.[5]

_____

[5]The Eleventh Circuit was one of several circuits using a lodestar method based on hours spent on a case multiplied by a reasonable hourly rate.  *Gisbrecht, supra,* 535 U.S. at 799; *Kay v. Apfel*, 176 F.3d 1322, 1324 (11th Cir. 1999).  The Supreme Court noted the lodestar method was commonly used in fee-shifting situations in which the losing party was

The Court concluded that § 406(b) does not displace contingency fee arrangements as the primary means by which fees are set for representing a Social Security claimant in court. *Gisbrecht*, 535 U.S. at 807.  The Court found that Congress had determined contingency fee agreements would be unenforceable if they exceed twenty-five percent of the awarded past due benefits, but within that boundary the attorney need only show that the fee sought is "reasonable for the services rendered."  *Id.*  The Court said downward adjustments can be made if the benefits are large in comparison to the amount of time counsel has spent in the case to prevent windfalls.  *Id.* at 808.

The Court did not issue specific guidelines for determining reasonableness, noting that courts are accustomed to making reasonableness determinations.  *Id.*  The Court did, however, note with approval that lower courts appropriately considered the character of the representation, the results achieved and any delay caused by the attorney, when assessing the reasonableness of the sought fees.  *Id.  Gisbrecht* also indicates the lower courts may require the attorney seeking § 406(b) fees to submit a record of the hours spent representing the client, as well as the lawyer's normal hourly billing charge.  *Id.*

Justice Scalia in a dissenting opinion stated "I do not know what the judges of our district courts and courts of appeal are to make to today's opinion," indicating that the factors the Court proposed courts examine in determining reasonableness are the antithesis of contingency fee agreements.  *Id.* at 809.  He also stated that the majority opinion does nothing to subject § 406(b) fees to "a uniform rule of law."  *Id.*

---

required to pay the fee.  Under § 406(b), however, the fee is paid from the past-due benefits collected.  Moreover, the Court noted that Congress had in 1990 authorized contingency-fee agreement for agency-level representation in § 406(a).  *Gisbrecht*, 535 U.S. at 805.

Some district courts have indicated difficulty in applying the aforementioned factors. One district court in 2006 noted that *Gisbrecht* does not instruct precisely how a district court should quantify the "downward adjustment" when the court concludes such an adjustment is in order. *Ellick v. Barnhart*, 445 F.Supp. 2d 1166, 1168 (C.D. Cal. 2006). In *Ellick*, the court analyzed forty-three reported post-*Gisbrecht* decisions and concluded in twenty-three cases the courts had approved the requested twenty-five percent contingency fees, although using different reasoning; in eight cases the attorneys had requested fees which were less than twenty-five percent and the courts had approved those requests; and, in twelve cases the courts reduced requested fees. *Ellick, supra,* 445 F.Supp. 2d at 1168-1171.  Of the cases in which fees were reduced to less than twenty-five percent of the awarded benefits, two courts used *de facto* hourly fees of 2.5 times the attorney's normal hourly rate, three reduced fees to rates the judges considered reasonable based on experience, and in five cases the fees were reduced drastically without precise explanation.[6]

One circuit has affirmed a district court's award of a twenty-five percent fee over the Commissioner's objection that the award resulted in an hourly "windfall" rate of $736.84. *Mudd v. Barnhart*, 418 F.3d 424, 427 (4th Cir. 2004).  The Fourth Circuit found the district court had considered the overall complexity of the case, the lawyering skills necessary, the risks involved, and the significance of the result achieved in district court. *Id.* at 428.  Such

---

[6]The other two cases involved somewhat unusual facts where the courts deducted fees attributed to a paralegal's work in one case and in the other case decreased fees based on a recovery for two minor children which did not involve additional work on the attorney's part.   *Ellick*, 445 F.Supp. 2d at 1171.

Clearly, there have been numerous other cases in the last year since *Ellick*, but this Court has not noticed any further distinctive trend that would require additional analysis.

analysis was satisfactory to determine a reasonable fee under *Gisbrecht*.

In this district, one court has found a range up to 2.5 times a normal fee would be reasonable, particularly with regard to other factors in that case.  In *Johnson v. Barnhart,* Civil Action No. 3:03-cv-68-J-MMH (M.D. Fla., January 12, 2007)(unpublished decision), the court concluded $250 per hour constituted a normal hourly rate for Social Security appeals and up to 2.5 times that rate would reasonably account for the contingency nature of the case.

*Application to the case*:

Here, Plaintiff's attorney is requesting that he receive the twenty-five percent allowed under the contingency agreements Plaintiff signed (Doc. #42-2),[7] less the $5,300 the Commissioner allowed for § 406(a) fees after the award of benefits and less $1,631 that counsel calculates is twenty-five percent of the benefits his client received for a seven-month period during which the case was delayed while counsel sought and obtained extensions in filing Plaintiff's  brief.  Plaintiff ultimately received $88,097.60 in past due benefits, which would entitle the attorney to a maximum of $22,024.40 in attorney fees under the twenty-five percent statutory allowance and the contingency fee contracts. Subtracting the items  mentioned above, Plaintiff's attorney is requesting $15,093.40, from which counsel acknowledges he will be required to refund to the client the EAJA fee of $2,229.37 previously received (*see* Doc. #41-1, ¶ 6).

In accordance with *Gisbrecht*, the Court will determine a reasonable fee award considering counsel's experience and background, his work on this case, the hours spent

---

[7]The initial agreement was dated January 8, 1998, and a subsequent agreement was dated July 18, 2003 (Doc. #42-2, pp. 1-4).

representing the client at the district court level, the complexity of the case, the difficulty of the case at the time counsel agreed to take it,[8] whether counsel caused any delay, and counsel's normal hourly rate.  In this case:

(1)  Counsel's practice is devoted largely, if not totally, to Social Security cases and he has been practicing several years.

(2)  Plaintiff's counsel began representing Plaintiff in her quest for Social Security disability benefits in January 1998 at the administrative level.  Counsel's representation continued representation through with the initial appeal to the district court and then through remand at the administrative level.  During the appeal to district court, counsel filed a six-page memorandum raising the single issue that because Plaintiff had a non-exertional impairment of post-concussion syndrome, the ALJ should not have relied upon the GRIDS to make a disability determination but instead should have required testimony of a vocational expert ("VE").[9]  Although Plaintiff's counsel cited appropriate legal authority, the bulk of the six pages is filled with direct or indirect quotes from a Code of Federal Regulations section, a doctor's report and a mental health diagnostic book (*see* Doc. #31,

---

[8]The Court notes that in the Eleventh Circuit's consideration of a reasonable fee under the lodestar method, one of the 12 factors examined was "the undesirability of the case."  *Kay v. Apfel*, *supra,* 176 F.3d at 1327.  Given the nature of Social Security cases, particularly those in which the attorney is not in the case at the beginning, that seems an appropriate factor even under a *Gisbrecht* analysis.  The factor also could be viewed as the substantial risk of loss at the time the case was undertaken.

[9]The GRIDS are a series of medical-vocational rules which use a matrix of a claimant's RFC for sedentary, light, medium or heavy work and the claimant's vocational profile of his age, education and past relevant work, to direct a conclusion on the issue of whether the claimant is capable of substantial gainful activity in the national economy.  20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00; *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).

pp. 3-5).

The Commissioner, in requesting remand, listed six steps for the ALJ to take upon remand, including obtaining a VE's testimony.  The Commissioner's remand motion went much further in finding errors or omissions in the record than did Plaintiff's memorandum, including noting that at least one set of exhibits from a treating source needed to be obtained (Doc. #32).

Thus, although Plaintiff's counsel effectively raised a significant issue, that issue did not cover the gamut of errors or deficiencies in the record and/or initial opinion of the ALJ.

Upon remand, Plaintiff was found disabled and awarded benefits for a period of disability beginning June 15, 1994 (Doc. #42-1, ¶ 7).  A copy of the ALJ's decision awarding benefits is not in the record, so the Court does not know the basis for the award.

(3)  Counsel spent 15.65 hours working on the case at the district court level (Doc. #36).  Counsel did not include any time preparing the five motions for extension of time. The primary periods of time were documented as reviewing the ALJ decision and preparing the complaint (3.9 hours in April 2000), reviewing the file and beginning drafting (4.25 hours in September 2001), and finalizing Plaintiff's memorandum (4.5 hours in April 2002 after being told no more extensions would be allowed).  Although that number of hours would not ordinarily be unreasonable for representation in a Social Security appeal, the Court notes the hours were spread over a two-year period and questions whether that many hours would be needed for the simple memorandum had it been done timely.[10]

---

[10]The Court is cognizant of the reasons provided in the initial motion to allow Plaintiff's counsel to file Plaintiff's memorandum out of time, involving the illness and death of a close family member. Such reasons clearly provided good reason for some extension (Doc. #22).

(4)  The medical history in the case was not abnormal, although it did extend over several years.  The claimant was awarded $88,097.60 in past-due benefits.

(5)  Counsel always are taking some risk in taking Social Security cases under contingency fees because, statistically, roughly fifty percent will lose at the district court level.  In this case, the risk of failure was no more than normal because there had been no prior denial of benefits when counsel entered the picture at the administrative level and counsel essentially was starting with a clean slate.  By the time the case reached the district court appeal, the error was somewhat obvious based on the short brief of the Plaintiff and the Commissioner's quick request to remand.

(6)  Plaintiff's counsel, as noted,  requested five continuances to file Plaintiff's brief in the case, causing a delay of seven and one-half months.  Recognizing that *Gisbrecht* indicated any delay caused by counsel is a factor the Court should consider in contingency fee determinations, Plaintiff's counsel proposes to handle the delay caused by the continuances  by deducting twenty-five percent (of the contingency fee amount) from the amount of the benefits Plaintiff would have received for those months ($6,524 multiplied by 25 % equals $1,631).  The logic of that proposal apparently is that the fee is derived from past-due benefits, and the eventual award of benefits from the Commissioner might have occurred seven months earlier had there been no continuances.

The Court disagrees with the application of that logic on the facts of this case, however.  Counsel states that the case was pending in the Court for twenty-six months and that seven months of the delay was attributable to him (Doc. #42-1, p. 7).  However, such explanation overlooks the fact that there also was an eight-month delay in obtaining service of process.  The complaint was filed in April 2000 (Doc. #1), and a filing fee was paid in

10

June 2000, mooting a question about the *in forma pauperis* request (Doc. #7).   The summons was not served until February 2001 (Doc. #11).  Thus, there was an eight month delay in service in addition to the seven and one-half month delay from the time the Plaintiff's brief was first due until when it was filed.  The Court calculates a delay totaling fifteen and one-half months is attributable to counsel.

The case would have been subject to dismissal without prejudice under Rule 4(m), Federal Rules of Civil Procedure, after the 120-day period allowed under the Rule, had either the Defendant moved for dismissal or had the Court on its own initiative issued a dismissal order.  There was no motion for extension of time and there is no reason in the record for the delay.   The Court would note that the events cited as reason for continuances in filing Plaintiff's memorandum began in March 2001, after service was finally accomplished.  Service on the United States is a relatively simple matter using registered or certified mail  under Rule 4(i), Fed. R. Civ. P., particularly for someone whose primary livelihood is handling Social Security cases.

Given the simple nature of the case under the argument raised by Plaintiff's counsel, the delays in this case are not reasonable to the Court.  Even using Plaintiff's counsel's system of calculation, the Court would find that fifteen and one-half months of delay were attributable to him.  Consideration of such delay would result in a reduction of counsel's fee of $3,495 rather than the $1,631 counsel calculated.  However, the delay is not the Court's only concern with the proposed calculation.

(7)  Counsel stated that his normal hourly rate for 2002 was $450 an hour (Doc. #42-

1, p. 5, n.3).[11]  The Court finds that amount to be excessive for Social Security practice in northeast Florida.   There are excellent attorneys who were charging hourly rates of approximately $200 at the time, and charge only $300 per hour today.  The Florida Bar has conducted two surveys in recent years of the average or standard hourly rates of attorneys. Of those responding in 2006, only eighteen percent charged more than $300 an hour, the top category listed.  The Florida Bar, *Results of the 2006 Economics and Law Office Management Survey,* (December 2006) *available at <*http://www.floridabar.org*> under Publications-Research*  (last visited July 20, 2007).   Sixty percent of Florida attorneys charged between $150 and $274 an hour.  *Id.*  Two years earlier, only thirteen percent charged more than $300 an hour.  The Florida Bar, *Results of the 2004 Economics and Law Office Management Survey* (July 2004) *available at <*http://www.floridabar.org*> under Publications-Research* (last visited July 20, 2007).   Although Social Security attorneys serve a valuable cause and should be rewarded for their service, the Court finds such service usually would not fall into the highest hourly fee category.

Counsel noted his proposed fee calculation would result in his receiving 2.38 times his normal 2002 rate of $450 for the 15.65 hours he spent on the case at the district court level (Doc. #42-1, p. 5, n. 3).  The Commissioner argues that the $15,093.40 fee award now sought ($22,024.40 minus $5,300 already paid for work performed at the administrative level and minus $1,631 proposed reduction for a seven month delay attributable to Plaintiff's counsel) would represent an hourly rate of $964.43, which would be a "windfall." (Doc. #44).  On the facts of this case, the Court agrees such a fee would

---

[11]Counsel states his 2005 hourly rate is $500 an hour (Doc. #42-1, ¶ 13(D)).

not be reasonable.

The Court would note that the requested fee would be greater than the $736 an hour fee approved by the Fourth Circuit in *Mudd*. However, under counsel's calculations, the multiplier would be less than approximately 2.5  times the claimed hourly rate, a factor another court in this district has used. *Johnson v. Barnhart, supra,* 3:03-cv-68-J-MMH (M.D. Fla., January 12, 2007) (Doc. #36, p. 14)(the court determined a "normal" fee rate of $250 an hour in that case).

The Court makes the following findings in this case.  Counsel's work on the case was not up to par, both in the quality of the memorandum he prepared (although admittedly it was successful) and the delays that he caused before the case was remanded to the Commissioner.  The Court would not consider a fee award equating to an hourly rate of $964 reasonable  in those circumstances alone.  Furthermore, the hours spent on the case in federal court (15.65) probably would have been less had the memorandum been completed in a timely manner.

Nonetheless, there was a contingency fee agreement.  Counsel also notified Plaintiff in a letter sent via U.S. mail of Plaintiff's ability to contest the sought fee (Doc. # 43-2),[12] and to date Plaintiff has not indicated any opposition.

Utilizing the factors in *Gisbrecht*, and having consideration to the facts particular to this case, the Court will reduce the contingency fee to prevent an unreasonable award. The Court notes that the contingency fee agreement between Plaintiff and Plaintiff's counsel outlines a fee payment that does not exceed twenty-five percent of the total past

---

[12]The Court credits counsel for advising Plaintiff she could seek advice from a legal aid services organization and providing Plaintiff with contact information.

due benefits awarded Plaintiff by the Social Security Administration.  However, the total

benefits awarded Plaintiff of $88,097.60 are high in this case based on the number of years

since the disability began, as opposed to the quality of work performed.  Counsel has failed

to demonstrate that the requested fee of $20,393.40 ($5300 for § 406(a) fees plus

$15,093.40 for § 406(b) fees) is a reasonable fee for his representation.  Notwithstanding

the contingency fee agreement, the Court finds a total fee award of $9,500 is reasonable

for the representation Plaintiff's counsel provided in this Court, which is subject to award

under 42 U.S.C. § 406(b) and review under *Gisbrecht*.  That amount is reached having

given due consideration to the aforementioned factors as applied to the facts of this case.

The Court notes counsel's representation totaling 15.65 hours at a reasonable hourly rate

of $250 and using a multiplier of 2.5, to take into consideration the contingency nature of

the representation, would equate to a § 406(b) fee of $9,781.25.[13]

### Conclusion

The Court will **GRANT IN PART** counsel's Motion for Award of Attorney Fees under

42 U.S.C. § 406(b) in the amount of $9,500.  However, as required under the statute and

*Gisbrecht*, counsel must refund to the Plaintiff the amount of $2,229.37 representing the

---

[13]The Court is aware from a Social Security website that in 2000, federal courts award plaintiffs disability benefits in six percent of the appeal cases and remand in another forty-eight percent of cases.  After the remand, about sixty percent of claimants are awarded benefits.  Thus, claimants prevail only about thirty-five percent of the time.  Social Security Advisory Board, *Disability Decision Making: Data and Materials* (January 2001), at 86, *available at* <http://www.ssab.gov/Publications/Disability/chartbookB.pdf>.  One argument thus is that to make up for the risk of loss, Social Security attorneys need to charge a winning client 2.7 times the fee the attorney would have charged on a non-contingent basis (which the attorney is prohibited from doing under Title 42, U.S.C. § 406(b)(2)).  Of course, the fact that EAJA fees are awarded in some cases after a remand, even if the ALJ does not eventually award disability, is not factored into that calculation.

EAJA fees previously awarded counsel (Doc. #40).  Thus, the Commissioner will pay Plaintiff's counsel $7,270.63 ($9,500 minus $2,229.37) and pay Plaintiff the remainder of the twenty-five percent of past-due benefits currently held in escrow.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st  day of July, 2007.

Copies to:
All counsel of record

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge